Good morning, ladies and gentlemen. Our first case for this morning is HSBC Bank v. Kirkland Townsend. Mr. Van Gogh. Good morning, and may it please the Court. Every attorney who appears before the Seventh Circuit first has the obligation to address appellate jurisdiction when those issues are presented. The question presented today is whether a judgment of foreclosure is final under 28 U.S.C. § 1291 before a district court enters an order confirming a sale of property under the Illinois Mortgage Foreclosure Law. We've answered that question, yes, invoking the effective finality doctrine under Forgay v. Conrad. And if I may, I'd like to offer the Court a new way to think about our finality argument that we've made in our briefs. In any judicial sale in a foreclosure proceeding, there are two public policy considerations that are at play. The first is that there is a strong policy in favor of judicial sales. And the reason for this is that we want third parties to attend and to bid up property close to their fair market value that reflects an arm's-length commercial transaction. That's equally as good for borrowers as it is for lenders, because that reduces deficiency judgments and it avoids the possibility or even likelihood of bankruptcy proceedings. The second policy consideration is closely related to the first. Courts are hesitant to claw back completed commercial transactions. And in this regard, as we've noted in our briefs, the law affords great protections to third-party purchasers at a foreclosure sale. If the law didn't afford this protection to third-party purchasers, those bidders would price into their bids the risk that a commercial transaction could be unwound. So let me ask you this question, Mr. Fankos. Suppose we got as far as saying that a commercial sale might provide appellate jurisdiction, but looking more closely at these foreclosure sales, as I understand your opponents, they're saying perhaps it is final once the sale has been confirmed, but this particular stage is still too early. And I understand that there is a 30-day period after confirmation during which somebody might be able to get a stay of an order or otherwise protect their interests. Well, that 30-day period is a relatively recent development under the mortgage foreclosure law, and I don't remember the exact date when that amendment was enacted by the General Assembly, but really it's a possessory right. So the transfer of title can take place on the same day that a confirmation order is entered, but there's a 30-day grace period that the homeowner has effectively to get out of the property. We don't think that has anything to do with filing a notice of appeal or applying for a stay. And if I might kind of walk through how a confirmation actually works in process, because at a judicial sale, the highest bidder makes effectively an irrevocable offer to buy the property. She receives a certificate of sale. That certificate of sale is presented at a confirmation hearing. At the confirmation hearing, the court will engage in the findings that are required to make sure that the sale was not the product of fraud or collusion, that proper notice was given. But that order, importantly, also says to the judicial officer or the sheriff in most cases that conducts the sale, you are to deliver deed to the buyer. And oftentimes what happens is these buyers attend the confirmation hearing, they want the confirmation order, they take it over to the sheriff's office and get a deed that same day. Unless a third part, excuse me, unless a defendant is prepared to file that stay at the confirmation hearing, notice it up properly, present it, be prepared, for instance, to obtain a bond on that same day, there's a grave risk that that title to the property will be transferred the same day the confirmation order is entered. Now, the 30-day period that Your Honor references means that that homeowner in effect has 30 days to find somewhere else to live. It has nothing to do with the stay because the stay needs to be presented, I believe, at such a rapid pace that effectively the transfer of title can occur before the defendant even thinks about obtaining a stay. So you're not persuaded that the transfer of title loan is subject to being unwound if there were an appeal in the case? I don't think that the transfer of title can be unwound on an appeal unless there's a stay. I think the indicate that's the sole means of obtaining protection is you need to have the stay perfected or else the transaction won't be unwound. I don't think that the case becomes moot on appeal because I think what could happen is let's assume that the purchase price at a sale is substantially less than what's owed. There's the question of a deficiency. And if there's a reversal on appeal, the deficiency could be wiped out. So I don't think it's a moot appeal, but the possessory interest in that property is gone if you don't obtain it. Because the buyer, due to the fact that it was a judicial sale, is protected from anybody trying to pull the property back from the buyer? Yes. And that's one of my policy points that I raised earlier is if the law were otherwise, no one would participate in the judicial sale and bid the property up to a point at which it reaches fair market value. And that's bad for everybody. So we think that the way that the law is structured, it results in a rapid turnover of title to the property. That may seem harsh to someone who's challenging the merits of the judgment. It's actually very good. And this is one of those strange instances in the law when the incentives are aligned for everybody. It's good for the borrower. It's good for the lender. If the law were otherwise, we'd have much higher deficiency judgments and a higher rate of bankruptcy. Right. So why isn't the availability of a stay from the order confirming the sale sufficient protection? I mean, trial courts make decisions all the time that have immediate and irrevocable effects unless a stay is issued pending appeal. We do that all the time and it's not mandatory. Right. And that's certainly the strongest argument to find that Forgay does not apply here. I acknowledge that. But a couple of points. First of all, the stay is entirely discretionary and Supreme Court Rule 305B expressly states that the circuit court judge, if it were state court, or the district court judge, if it were federal court, can consider the requirement of a bond to protect the appellee's interest in the property. The very nature of these proceedings is such that I don't think it's reasonable or the ordinary case that a defendant's going to be able to post a bond. The other issue is related to the point I just made, Judge Hamilton, is that the process of this foreclosure, where title can literally transfer the same day a confirmation order is entered, lends itself to irreparable harm because you won't have the foresight to get in on a stay application. Counsel, what worries me about your argument is that there are a lot of cases where some kind of irreparable harm occurs, but the Supreme Court says that's not enough. Think of orders disqualifying counsel, or denying motions to disqualified counsel, or transferring venue, or there's a very long list of orders the Supreme Court has held not to be appealable. I wonder whether Forgay is still good law in the Supreme Court. I've been trying to find the last time it was actually followed in that institution. It seems to have been at least 100 years ago. 1906 is the most recent one I can find, and since then the Supreme Court has said many times that the existence of irreparable harm is not enough. I disagree that it's accurate to say that 1906 is the last time. Oh, I'm searching for help. It may be 1914. I can give you two examples. The first is the radio station W.O.W. case, which is cited in HSBC's brief as well. The other is the Brown Shoe v. United States case, which is an effective finality case that's cited in our brief. I acknowledge that the citations and the reliance upon Forgay are somewhat rare, but I also ask the court to consider, too, that because of the... Counsel, let me tell you my problem. It's not just that citations are rare. It's that in the last 30 years, the Supreme Court has repeatedly held, not just said, but held that irreparable harm is not enough to justify an immediate appeal. There are lots of examples of which disqualification of counsel is one, where the justices have said, okay, we recognize that this may be very harmful to the parties, but you can't appeal. I'm trying to figure out what the current status of a doctrine that seems to say harm, therefore appeal, could be, given the Supreme Court's last 30 years of cases. Right. I think you're primarily referring to collateral order doctrine cases. Right. That's the last time Forgay was cited. It was Firestone, 1981. The justices treated Forgay as a precursor to Cohen against beneficial industrial finance, as the precursor to the modern collateral order doctrine. Right. The reason I think that's done is because if there's really two animating principles that come through both Forgay and the other effective finality cases, as well as Cohen, and that's this. The first one is separateness. We can't have... The issue that's sought to be appealed from now has to be separate from that which the court would address later, which we think this case certainly meets that requirement. The second is this concept of unreviewability, that the order can't be reviewed, that practically speaking the order is not reviewable if you wait until... Yes, that's... I think we're certainly a shortfall here, because even after there's an order to hold a sale, the sale has to be held, it has to be confirmed as commercially reasonable, and any deficiency judgment has to be fixed. All of those are there. They are, and our argument really hinges on this notion that title will be transferred and the property's gone, even in the event of a successful appeal. Now, I would agree with Your Honor that mootness is really not the issue, it's really unreviewability of the sale of the property itself. That in and of itself is what's unreviewable because of the... But it's not unreviewable. Not only is it reviewable in principle, if there's a stay, it's reviewable as completely as one can imagine. And that depends on the availability of the stay, and as our brief sets forth, we think that given the discretion of... So what's going on here is you want to predict that there won't be a stay, and based on that prediction say it's unreviewable. But why should we predict something to make it unreviewable when we can equally predict something that would make it reviewable? Your Honor, the vast majority of foreclosure cases, if not most foreclosure cases, I believe that a trial judge is going to be hesitant to stop a commercial transaction to find that there is a serious issue presented on the merits which requires the imposition of a stay. Let me come at it from a different point of view. Let's think about Mohawk Industries for a minute, one of the cases in the line that Judge Easterbrook is referring to. There was no collateral or order appeal there, but the court in Mohawk does discuss other ways that the issue could be brought before the court, and at least one of those ways, as I read Mohawk, was absolutely secure. You could simply defy the order, get held in contempt, and bring it up that way. So that doesn't rely on any court's discretion, and I suppose that would be a way to distinguish your case from Mohawk. But the problem, I guess, is that the other thing you can read Mohawk to stand for is that the substitute doesn't need to be perfect. The substitute just needs to be good enough, and when you apply the criteria for a stay, likelihood of success, the merits, and so forth, one has to assume the state courts will do what they're supposed to do. I acknowledge that that's certainly an issue. The problem, I think, is that there's really no way for, I mean, Mr. Townsend to defy the order. If the title's transferred, the title's transferred, then you invite a separate... Right. He doesn't have available to him what the people in Mohawk had. Correct. Without returning to the early days of our republic and rebellions against oppressive courts and the like, which we probably don't want to encourage. Would you agree, Mr. Vanko, that foreclosure sales are overwhelmingly to the creditors with a straight credit bid? They are, but a third party can certainly purchase the property as well. I mean, if the creditor comes in and participates in the sale, the third party has the opportunity to exceed the credit bid. Right. Well, I would think that that would, I don't know, and I hope counsel might be able to tell us, but I would think that that's probably unusual. But could I ask you about the Illinois statutes here? Sure. You had focused, I think, on Section 1509C about claims barred, right? And I'm looking up at 1509A about the deeds that are issued out of this, and it seems to provide protection for the owner, defendant in this case, against creation of an innocent, bonafide purchaser, at least if there's an appeal pending. Why isn't that sufficient protection for you? I think you need to, because I think you need to read 1509A and 1509B together. 1509B specifically addresses that delivery of the deed is sufficient to pass title. What I think 1509A is intended to address is that if there is a transfer of title, there's no stay entered, so the property's gone, but there's a subsequent appeal and the price is unconscionable or uninsured. If they receive the property within the 30-day appeal period, it would be liable, perhaps, for some of the proceeds that were received as a result of the sale. I think it's the only way to make sense of this is to read 1509B and the last part of 1509A together. And I think it has to do with providing the defendant some means to obtain the proceeds of the sale or some aspect of the proceeds if the judgment is overturned. You don't think a court can undo the transfer of title? I think it has the raw power to do it, but at least one condition needs to be met. Assume you're the third-party purchaser. You're not a party to the case. I believe if the transaction is going to be unwound, the defendant needs to make you a party to the case. The court needs to have jurisdiction over you, and that presents a particular problem in federal court under diversity rules, because in all likelihood, the defendant is a citizen of the state of Illinois, and I would guess in most cases that the party who's buying at a judicial sale is a citizen of the state of Illinois. Then you might have a subject matter jurisdiction problem in the district court. So I believe that the court has the ability to unwind a sale. I certainly don't think it has to, and I believe you need to add the third-party purchaser into the case as a party to the case. All right. Thank you very much, Mr. Danko. Mr. Haskin. Good morning, Your Honors. May it please the Court. My name is Tim Haskin. I'm here with my colleague Gina Valdetero, and we represent the affilee HSBC Bank in this case. Mr. Townsend acknowledges in his briefing and in opening argument that the only potential basis for this Court's jurisdiction over this appeal is the Forgay v. Conrad case decided by the Supreme Court in 1848. But Forgay does not provide this Court jurisdiction over judgments of foreclosure entered pursuant to the Illinois Mortgage Foreclosure Law. Could you raise your voice, please? Yes. Sorry, Your Honor. The first reason is that Forgay no longer offers a continuing basis of independent jurisdiction. You know, the Supreme Court has never said that. And this Court has been scrupulous, I think of state oil against con, I think of McDonald, to acknowledge that it is not up to us to elucidate the Supreme Court about which cases it has decided are still live or not. And I would point out that Forgay does cover a somewhat different set of cases from the collateral order Cohen cases, because Forgay covers the cases where this is the whole game. This isn't collateral. This is about as central as one could imagine. So I think it probably flunks the first part of the Cohen test, which is why nobody was to inform the Supreme Court that their case is no good. Well, I think in the 160 years since Forgay was decided, you've seen a rapid development of appellate jurisdiction in both clearly defined basis by Congress and the Court. No, but so what? I mean, no decision of the U.S. Supreme Court overrules Forgay. I don't see any statute that overrides, I mean, of course if Congress passed a statute, it would be entitled to put a different regime in place. So I'm just not sure that you're suggesting something available to this Court. Well, I think comparing to perhaps the Second Amendment case, appellate jurisdiction has not, unlike the incorporation of the Second Amendment where the Supreme Court hadn't decided that explicit issue, appellate jurisdiction has been decided and reviewed on and commented on extensively in the 160 years since Forgay. And what you've seen is Forgay has eroded. It is basically no longer active in Supreme Court jurisdictional precedent. And I think the reason is because you look at the developments of the law. 1292A1, for example, on injunctive orders. No, no, we understand all of those things. You know, if you pick up Wright and Miller and you go to the section on Forgay, they're actually big fans. They say that this, you know, it's just a little residual area. Other doctrines cover a lot of things, but they think in the small set of cases that meet the criteria of Forgay, which might be something useful for you to talk about, it hasn't disappeared yet. Okay. Well, I think when looking at how Forgay then fits into our current jurisdictional landscape, there has to be an understanding that I think if the Forgay order was decided today, Ms. Forgay would be able to appeal that order as a 1292A1 order. And it kind of shows that Then why can't Mr. Townsend do the same here? Because the order in Forgay is different than the order we have here. The judgment, the order in Forgay operated, it required immediate turnover of property. There was no further judicial supervision. It was the immediacy, the turnover, the coerce effect of that order, which is what Some people have argued that there are actually two parts to Forgay. Number one, as you're saying, immediacy, like right this second, and number two, the irreparable harm. They don't necessarily have to go together. And I think that that's the proper way to look at Forgay, because when you want to quantify the irreparable harm, and what does irreparable harm mean? And I think we have to look at the facts of Forgay, and it's the immediacy of that order. It's the fact I want to ask you how you understand that, okay? Because you've argued in your briefs, at least as I understood them, that, well, there's a redemption period, the sale isn't going to be immediate, we might decide as the beneficiary of this order to wait before asking for the sale to go forward. Those arguments don't seem very persuasive to me, because the losing defendant has to decide right now, within 30 days, whether to appeal, right? I don't think that HSBC is taking the position, or that it's required by appellate jurisdiction. This is an interim order, would be the position. It's our opinion that there is no bar if there's a failure to appeal this judgment of foreclosure. That it's an interim order, that that could be modified, that merges into... Let me get off on a side track for a second. The reason we're here is because HSBC convinced the district judge to enter 54B language in this judgment, correct? Well, there's nothing in the transcript from September 6th. You all submitted the order that the judge signed that included 54B language, correct? I think... You've changed your position on appealability, but you submitted the 54B language in the order, right? That's true, whether you're willing to say it or not, all right? I'm unaware at this moment. I assume that Mr. Townsend did not appear, and there is a Rule 54B certification in the order. And the transcript makes very clear that the foreclosure judgment was submitted by HSBC's lawyers, okay? Correct. He signed it without change. High proofs and all. Perfectly routine, ordinary, but that put Mr. Townsend in a box, because with that 54B language, he has to appeal unless he is such a confident expert on federal appellate jurisdiction that he knows it won't fly as 54B, right? That's correct. Which would be extraordinary for a pro se defendant, right? That would be correct. Okay, so we're here because you guys put the 54B language in. But to back up a second, if what you're saying is that 4K doesn't apply because the case remains under judicial supervision, I think I get that. And then we have to – but I'd be interested in your thoughts about when a third-party buyer gets rights that can't be impaired, okay? But if you're saying, well, it's not final because we don't know whether we're going to go forward with the sale or we might wait a few months, we might never do it, that doesn't – that's not fair to somebody in Mr. Townsend's position, because he has to make a decision whether to appeal before knowing whether you're going to go forward with the sale. I think the statute, the Inland Mortgage Foreclosure Law, clearly prescribes a process, and once this foreclosure judgment that's entered on appeal now, there is a three-month statutory redemption period, that that's the minimum time period that must pass. Okay. And I understand that. I don't understand why that affects the appealability of the order. Well, because with the judicial supervision and the subsequent processes, we have now come – the order here looks very different than the order in 4K. And to the extent we're looking at irreparable harm and the harm caused, we have continuing judicial supervision, we have continuing further orders that actually require transfer of property. This order doesn't require Mr. Townsend to do anything at this moment. When in that process does a buyer at the auction acquire rights that impair the owner's rights? And this is where the 30-day stay that's prescribed by the Illinois legislator comes into play. For possession. For possession. So, possession cannot transfer until 30 days after, at the earliest, the sale confirmation order. In the sale confirmation order, the court would either place in an order requiring a transfer of property in 30 days, or that could be set by separate order if there's an issue where the borrower doesn't vacate his home. So there is one, possibly two, separate additional orders that would actually trigger the transfer of property. In that 30-day period, that overlaps co-extensively with the notice of appeal period. And in that 30 days, Mr. Townsend or any borrower can file a notice of appeal and seek a stay of the order transferring property. If a stay is issued like that, if I understand the sale procedures, the buyer has to have basically cash on the barrelhead, right? Yes. I mean, within 24 hours. What happens to that money? Who keeps it during an appeal in this process? Well, it could go into, I'm not entirely sure. I will admit that, but whether it's a trust or a receiver of some sort. If I were a buyer, I'd sure be interested to know who's got my money while I'm waiting for this appeal to be resolved. Is it correct that most of these sales go to the lender making a credit bid in the first instance, or are there significant numbers of outside buyers who come in? It's unusual to have a third-party purchaser come in. Generally, once that sale confirmation order, it's going to be a lender who has credit bid and purchased the property, which also affects, I think, the irreparable harm analysis to some extent, and the extent that we are now vis-a-vis parties. Well, in that case, it's easier for the court to control it. But if there's any possibility, really, that you're going to have an innocent third-party bonafide purchaser for value, etc., will come in with rights, then there's at least a risk of irreparable harm. Well, the 30-day stay would still apply to the third-party purchaser. What about Mr. Venko's point that the deed might be issued right there at the confirmation? Is the deed somehow put in limbo if there's a stay granted 10 days later while the 30-day period is running, or is the deed revoked to be reissued? What happens to the deed if there's a stay after it has actually been issued to the purchaser? Well, I think the deed would probably go into limbo of some sort, yes. The key there would be transfer of possession. No, I mean, there's title transfer. Why would title transfer be revoked or somehow stayed if the deed's already been issued? Because the 30-day period is a possessory interest. It's not a title interest, as I understand it. And with the stay of the enforcement of the sale confirmation order, though, if that is the entire thing that is stayed, it's potentially the deed could be undone or an equitable arrangement could be entered into where the equitable title... Do you know? Are you just speculating? Has this ever happened? I mean, I feel like we're out here in the realm of fantasy. Yeah, I'm not aware. I would be happy to submit a 28-J letter on this issue if the court would find that to be useful. We'll issue an order if we decide we want one. So you, in the meantime, have not sold this property. Is that correct? Correct. That's correct. The property is still with Mr. Townsend, and he, because the judgment of foreclosure does not have any coercive effect, has still been able to live in his home, which is very different than that order in Forgay and very different than some of the coercive orders that cause irreparable harm. And as we keep talking with Mr. Vanco and here, we're focusing so much on the sale confirmation order and on those 30 days. And I think that shows that that's the order that moves the ball here. That is the order that actually requires action by some party and requires Mr. Townsend to transfer title. But I want to back up. We focused on that just because it seems like that may be a potential spot in the procedure where the necessary finality that Forgay looks for exists. But to hear you describe it, the judgment of foreclosure, is just so many words on a piece of paper. It means nothing. Is that true? No, that's not true. The judgment of foreclosure determines that Mr. Townsend owns a debt or owes a debt, that there's a valid security interest to collect on that debt, and it converts that security interest into a judgment lien on the property and establishes priority. It's the first step of the debt collection process. But everything else that is associated with a debt collection process, including foreclosing and extinguishing of junior liens, determining deficiencies, surplus, sale, all that part occurs at the sale confirmation order. And that is many months after a judgment of foreclosure. And when we're looking at finality... But you would agree that Mr. Townsend would be better off if, upon consideration of the that there was no valid debt, maybe it agreed with his arguments about who has the note and robo-signing and the role of MERS and all the rest of these underlying... Well, in this case, it was a motion for summary judgment. If he would have won that motion, the proceeding would have continued, whether a second motion for summary judgment or a trial on the factual issues of the case. So in that sense, he would have been better off than having it adjudicated that he owes a debt. Yeah, no, I mean if he'd won the whole case. I don't mean just summary judgment, obviously. Can the issuance of a deed in Illinois be undone by the court? I'm sorry? If a foreclosure sale is held, the trial court confirms the sale, the deed is issued, an appeal is pending with at least a stay on the transfer of possession. Can the courts later undo the deed and take the title back from the buyer? You know, and I would make the same offer. I don't know for sure. I would be willing to submit a 28-J letter to agree on that. I will say the Illinois Supreme Court... It's a big question because, frankly, the state has an interest in these sales being final, and if the rule is no, the deed cannot be rescinded, then you would get into all sorts of arguments about whether money is a substitute, whether real property is still unique. I think with the stay of the enforcement, if you stay the sale confirmation order, and that is the order, well, practically maybe deed does transfer quickly, but if there's a stay of the sale confirmation order, that is the order that confirms sale. Until that point, it is only an offer, which hasn't been legally accepted yet. So if the stay, even post-dating, is of the sale confirmation order, I think legally it would follow. And I would point out that the Illinois Supreme Court, in its state court, has determined that the sale confirmation order is when appeal is appropriate. So they have considered the irreparable harm, and they've concerned for their jurisdictional purposes that their legislature prescribed. Right. You pointed that out in your brief. All right. Well, your time is up, so thank you very much. And, Mr. Vanko, your time expired, but I'll give you one minute if you have any final thoughts. Thank you. Chief Judge Wood, you asked a question towards the end of my argument about Mohawk, and I believe the question concerned the fact the language in Mohawk that says an imperfect remedy does not equal irreparable harm. Right. And I didn't do a very good job of answering that question. The only thing I would add to my prior points is that I believe you need to view that in the context of the case and the context of the collateral order doctrine. And in particular, in Mohawk, that case resolved a circuit split that dealt with orders that compelled disclosure of attorney-client privilege materials. And in that type of a case, the court always has the ability to vacate the judgment and remand with instructions not to use the privileged material. And, in fact, in that case, I believe what the court was referring to in its discussion of an imperfect remedy is that disclosure of attorney-client privilege material led to a later class action lawsuit against the employer. So I think in view of the fact that it's a collateral order doctrine case, the foregoes right to the merits. I don't think that language should be construed beyond the purpose of that case. All right. Thank you very much. And, Mr. Vanko, you are serving at the request of the court. Are you not? We appreciate your help very much. Thank you so much.